[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
This is a negligence action seeking damages for personal injuries allegedly caused when a golf cart in which the plaintiff was riding as a passenger, operated by the defendant Lisa Labbe allegedly went out of control, causing the plaintiff to be thrown from the golf cart. The plaintiff and the defendant Lisa Labbe were allegedly co-workers, in the employ of Easter Seal Society of Connecticut. The accident occurred on a path of the property owned by the Society. The accident occurred in the course of employment. The plaintiff is entitled to worker's compensation benefits from the defendant Society, who is no longer a party defendant in this action.
The defendant Lisa Labbe moves for summary judgment in this action. The defendant claims that the provisions of General Statutes § 31-293a bar the plaintiff from prosecuting this action against her. General Statutes § 31-293a provides, in relevant parts, as follows:
"§ 31-293a No Right Against Fellow Employee; Exception
 If an employee . . . has a right to benefits or compensation under this chapter on account of injury . . . caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee unless such wrong was wilful or malicious or the action is based on the CT Page 2821 fellow employee's negligence in the operation of a motor vehicle as defined in section 14-1.
It is noted that this action, as presently pleaded, is in a single count alleging negligence. A second count alleging reckless and wanton misconduct was stricken by this court,Hammer, J. on March 1, 1996.
The Appellate Court, in Pinheiro v. Board of Education of theTown of West Hartford, 30 Conn. App. 263 (1993) dealt with a similar question as is presented to this court. The Pinheiro case involved a circumstance whereby the injured co-employee was a passenger on a Red Seal tractor being operated by another employee on the grounds of Hall High School in West Hartford. ThePinheiro court first determined that the tractor was not suitable for operation on the highways of the state of Connecticut and cannot be registered because the vehicle does not satisfy minimum speed requirements; is not equipped with turn lights, is not equipped with rear view mirrors; is not equipped with a windshield wiper; is not equipped with fenders or wheel protectors; is not equipped with brakes on all wheels; is not equipped with a proper parking brake system; is not equipped with a proper stop light; is not equipped with parking lights; is not equipped with two tail lamps; is not equipped with a suspension (springs) at each wheel as required by department of motor vehicle regulations. All but the last of these deficiencies related to the absence of equipment required of motor vehicles in order for the vehicle to be registered for, and to be operated on public highways.
The Pinheiro court does not adopt a simplistic test or criteria based upon the question of whether a specific individual vehicle is capable of being registered. The court states ". . . an automobile that is not registered because its equipment is in disrepair . . . is still a motor vehicle for purposes of §24-1, although not permitted to be operated until necessary repairs are made, because it is an automobile by design."Pinheiro v. Board of Education, supra, pp. 272, 273 (emphasis added). "(Special mobile equipment can operate on a highway for a limited purpose, but such vehicles are still not suitable for operation on a highway because they are not designed for such use)" Pinheiro, supra, p. 272 (emphasis added). "The tractor involved in this case . . . does not incorporate in its design many equipment items necessary for its registration and hence suitable for operation on a highway" Pinheiro, supra p. 273. CT Page 2822
The defendant submits two affidavits in this case. John Yacavone, chief of legal services for the Connecticut Department of Motor Vehicles states that "a golf cart is not registerable as a motor vehicle in the State of Connecticut, as a golf cart is not meant for on-the-road operation. Under the laws of the State of Connecticut a motor vehicle as defined in Connecticut General Statutes § 14-1 must have: . . ." The affidavit then lists twelve items of equipment which are not included on golf carts, and which are required by statute. It also refers to DMV Reg. § 14-103b which requires the vehicle to have a sustainable speed capability of 40 miles per hour.
The second affidavit is by Charles Dickinson, Assistant Director of Building and Grounds for the Easter Seal Society's Camp Hemlock in Hebron, Connecticut. He affirms that the golf cart in question is not equipped with ten of the eleven items of equipment required by law for registration, as specified by John Yacavone, listing each such deficiency, from head lamps through tail lamps.
The plaintiff files no counter affidavit to take issue with either the affidavit of John Yacavone or Charles Dickinson. On the basis of the criteria set forth in Pinheiro v. Board ofEducation it is clear that this vehicle is not designed for use on the highway. There is no reason to believe that the necessary equipment was incorporated in this golf cart vehicle, but was merely not functioning, or in disrepair.
Hence, as determined by Pinheiro, supra, this golf cart would not be a motor vehicle for the purposes of General Statutes §14-293a, as the vehicle is not suitable for operation on the highway because it is not designed for such use.
 II
The plaintiff takes the position that golf carts, while being operated off the highway for purposes other than to cross from one side to the other, or other than when being operated on roads or highways or the grounds of state institutions by state employees, are in fact motor vehicles and hence, the plaintiff claims, the immunity from suit by a fellow employee, per General Statutes § 31-293a, is inapplicable.
The argument proceeds as follows. Because General Statutes CT Page 2823 § 31-293a refers to General Statutes § 14-1 for the definition of what is a motor vehicle, then because General Statutes § 14-1(47) excludes from the definition of "motor vehicle" golf carts when being operated under certain circumstances, to wit "golf carts operated on highways solely for the purpose of crossing from a part of the golf course to another, golf cart type vehicles operated on roads or highways on the grounds of state institutions by state employees, agricultural tractors (etc.)" then the golf cart, when being operated under other than such circumstances must be a motor vehicle, and therefore is exempt from the immunity provided by General Statutes § 31-293a.
Following that line of reasoning golf carts would be motor vehicles as they approach the public highway, would lose the character of motor vehicles as they cross the highway, and would then again become motor vehicles after they have crossed the highway. Hence the fellow employee would have a cause of action against the fellow employee operator if the occurrence took place before or after crossing the highway, but not if the incident occurred on the highway. The court can discern no indication from the legislative history of the applicable statutes that the legislature either contemplated or intended such an irrational result.
A review of the legislative history of General Statutes §31-293a is appropriate. Prior to the enactment of General Statutes § 31-293a there existed no statutory prohibition against employees asserting a common law cause of action in negligence against a fellow employee for personal injuries incurred in the course of employment. The common law "fellow servant doctrine" insulated the employer from claims, arising out of agency, where an employee negligently injured a fellow employee — a "fellow servant". No such common law or statutory immunity existed as concerns claims between fellow employees.
Public Act 31-293a was enacted in 1967, by Public Act 842, § 5. The legislative history both brief and direct. Mr. Pawlak (95th), on behalf of the Labor Committee stated as follows:
 Section 5. This section stops third party suits against fellow employees since such employee is usually unable to meet any judgment involving serious injuries. However, the section specifically permits suits against fellow employees where the CT Page 2824 injury or death was the result of wilful or malicious wrong by such fellow employee or involves the operation of a motor vehicle. We are here trying to make sure that a fellow employee cannot ordinarily be sued for simple negligence on the job, but we do not believe that he should be protected against wilful or malicious wrong, nor do we believe he should be protected if the employee is injured as a result of a motor vehicle accident.
If there be any question as to why motor vehicle accidents are excluded from such immunity, which of course do not necessarily produce more severe injury than do other types of negligent conduct involving other types of mechanisms, such questions is answered by the statute itself.
 No insurance policy or contract shall be accepted as proof of financial responsibility of the owner and as evidence of the insuring of such person for injury or death to persons or damage to property . . . if it excludes from coverage any employee of such owner from such policy or contract.
(Emphasis added.) More particularly:
 Any provision of such an insurance policy or contract effected after July 1, 1969 which excludes from coverage thereunder any agent, representative or employee of the owner of a motor vehicle involved in an accident with a fellow employee shall be null and void.
(Emphasis added.) This latter provision concerning the motor vehicle insurance provision appears to be first included in 1969, as a provision of Public Act 696, § 4.
In 1969 the legislature, through Public Act 569, § 1, also amended General Statutes § 14-1 to exclude from the definition of "motor vehicle" golf carts operated on the public highway "solely for the purpose of crossing from one part of the highway to another." (The other exclusions, "willful and malicious" and "roads or highways on the grounds of state institutions by state employees" are not relevant to the circumstances of this action.)
The legislative history reveals that the purpose of enacting this legislation was to allow golf carts to cross from one side CT Page 2825 of the golf course to another, and to allow them to be operated on the roads of state institutions.
 Rep. King: ". . . my town in Farmington has a golf course which is divided by a highway and presently these cars cannot cross from one part of the course to the other part unless they are registered by the Motor Vehicle department and the same problem is in many area of our state.
Similarly, because hospital roads were considered to be within the definition of highway Ms. Alfano spoke in favor of the bill, on behalf of the Department of Public Health, as the department wished to be able to use golf carts on the roads within their facilities for transportation purposes. There is no indication in any of the legislative history that this amendment was intended to have any effect upon the provisions of General Statutes § 31-293a.
At that time, as is presently the case motor vehicles were absolutely prohibited from being operated on the public highway unless the vehicle was registered with the Commissioner of Motor Vehicles, or unless it was excluded from registration by virtue of it being excluded as a "motor vehicle" under the definitions of § 14-1(47).
General Statutes § 14-12(a) provides "No motor vehicle shall be operated or towed on any highway, except as otherwise provided, unless it is registered with the commissioner". . . "Although a golf cart may comply with the minimum criteria if a motor vehicle", as is any other vehicle "propelled or drawn or any nonmuscular power . . .", (General Statutes § 14-1(47)), yet absent statutory permission it would be a criminal act to operate such vehicle on a highway, because it could not be registered even if its stock rudimentary equipment was in proper working order.
Many other types of motor vehicles, vehicles "not propelled or drawn of muscular power", are determined by General Statutes § 14-1(47) to be non "motor vehicles", i.e. aircraft, motorboats, road rollers, baggage trucks, electrically operated wheel chairs and the like. See General Statutes § 14-1(47). However, declaring such motor vehicles not to be motor vehicles does not change the mechanical composition of the device. It merely allows the exempted generic "motor vehicle" to be operated on the highways for their inherent limited purposes, and subject CT Page 2826 to certain conditions, such as rates of speed. Otherwise they could not be operated on the public highway under any circumstances because, by their design, lacking essential safety equipment, they could not be registered. C.G.S. § 14-12a. The golf cart exception of C.G.S. § 14-(47) is even more limited than are the use of such other vehicles, as carts may only use the highway for the limited purpose of traveling from one side of the highway to the other, whereas other such "non-motor vehicles" are allowed to travel laterally down the highway.
The purpose, the only purpose, of the golf cart exception contained in General Statutes § 14-1(47) is to allow the vehicle to be operated on the highway for very limited purposes, as set forth in the statute. It does not, and was not intended, to create a special exception to General Statutes § 31-293a. No such exception exists either in common sense, rational reasoning, or legislative history.
Finally, these statutes must be read in the context of the proof of financial responsibility requirements of General Statutes § 31-293a. General Statutes § 14-12b(a) provides "no motor vehicle registration shall be issued by the commissioner for any private passenger motor vehicle . . . or a vehicle with commercial registration . . . unless the application for registration is accompanied by a current automobile identification card in a current insurance policy . . . verifying that the applicant has the required security coverage . . .". General Statutes § 31-293a provides "No insurance policy or contract shall be accepted as proof of financialresponsibility . . ." The statute then states "any provision ofsuch an insurance policy or contract effected after July 1, 1969, which excludes from coverage thereunder any agent, representative or employee of the owner of a motor vehicle involved in an accident with a fellow employee shall be null and void." (Emphasis added.)
This court can discern no statute or regulation which requires an employer to maintain any liability insurance whatsoever on any "motor vehicle" (a vehicle drawn or propelled by non-muscular power) which is of a design which does not qualify for registration by the Department of Motor Vehicles. It is only through the discipline of General Statutes § 14-12(a) in connection with the mandatory security requirements of General Statutes § 14-12b(a) together with the above provisions of General Statutes § 14-293a imposed upon the owner that the CT Page 2827 employee is protected through mandatory security requirements from the economic catastrophe of being an uninsured person in co-employee claims. Although such protection is not infallible, as circumstances do exist whereby employers, in violation of the statute may allow motor vehicle liability policies to lapse, which is a violation of statute (General Statutes § 14-12c), or may not register the highway type vehicle at all, yet it does provide reasonable assurance that the employee, who has no control over the employer's coverage, will not be placed in the same uninsurable financial jeopardy as existed prior to the enactment of General Statutes § 31-293a, in the event of a highway vehicle accident causing injury to a fellow employee.
Nowhere does it appear that the legislature has determined that golf carts are motor vehicles which are or are intended to be exempt from protective provisions of General Statutes §31-293a when they are operated in either a highway crossing, or in a non-highway crossing capacity as is the circumstance of the present case. It is clear from the documentary evidence submitted herewith that this particular golf cart is "not suitable for operation on a highway because it is not designed for such use."Pinheiro, supra, p. 272.
It should be noted that this case deals with the interpretation of statutory provisions. Uninsured motorist claims under the provisions of insurance contracts deal with contract definitions. There is nothing to prevent insurance contracts providing first party benefits, from using non-statutory terms in defining "motor vehicles". See Norfolk and Dead Mutual FireInsurance Company v. Wysocki, 243 Conn. 239 (1997).
The plaintiff appears to claim that the language of the statute, General Statutes § 14-1(47) is clear and unambiguous, and therefore requires no statutory interpretation. It is claimed that because golf carts are specifically referred to in several phrases of the statute that the last phrase of the statute, "and any other vehicle not suitable for operation on the highway" is inapplicable to golf carts. The court does not agree with the proposition that statutory interpretation is precluded by the mere mention of golf carts as one of the enumerated vehicles which are allowed to use the highways under certain limited circumstances, or for use within their traditional limited functions. Quite to the contrary that latter phrase would indicate that the enumerated vehicles, including golf carts, are in fact not suitable for general operation on the highway, and CT Page 2828 are in fact merely granted a special exemption to allow their use on the highway for such limited functional or use purposes.
At most, the plaintiff may be in position to claim that the language of the statute is ambiguous. ". . . where the words of a statute fail to indicate clearly whether the provision applied in certain circumstances it must be construed by this court. The rules of statutory construction dictate that this court is to be guided by the language, purpose and legislative history of the statute in question." Vanzant v. Hall, 219 Conn. 674, 682 (1991).
"We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve." Concept Associates, Ltd. v. Boardof Tax Review, 229 Conn. 618, 624 (1994).
It is clear that the legislative purpose of General Statutes § 31-293a is advanced and achieved by providing workers compensation benefits and protection to the injured employee, while at the same time offering to the co-employees, many of whom are citizens of little or modest means, protection against the jeopardy of being "unable to meet any judgment involving serious injuries." There is simply no rational reason why, and no legislative history to indicate, that the legislature did, or intended, to treat golf carts in a fashion different than any other non-highway type mechanism for the purposes of this immunity statute General Statutes § 31-293a. Allowing limited use of the highway does not alter that conclusion.
For the reasons set forth herein the motion for summary judgment is granted.
SULLIVAN, J.