ARTUR PINHEIRO *v.* BOARD OF EDUCATION OF THE TOWN OF WEST HARTFORD ET AL.
(11052)
(11053)

FOTI, LAVERY and FREEDMAN, Js.

Argued December 8, 1992—decision released February 9, 1993

*Ronald T. Murphy,* for the appellant (named plaintiff).

*Patricia A. Cofrancesco,* for the appellees (named defendant et al).

*William C. Berry,* for the appellee (defendant Peter J. Tierinni).

FREEDMAN, J. The named plaintiff and the intervening plaintiff, the town of West Hartford,[1] appeal from the decision of the trial court granting the defendants'[2] motions for summary judgment in this negligence action.[3] This appeal presents the issue of whether a tractor, claimed to have been operated negligently in the course of the plaintiff's employment by one of the plaintiff's fellow employees, is a "motor vehicle" and thus falls within an exception to the general bar against actions based on the negligence of a fellow employee created by General Statutes § 31-293a.[4] Because we

---

[1] As a result of the injuries giving rise to this action, the town of West Hartford became obligated to pay and has paid to the plaintiff sums of money as workers' compensation. Accordingly, the town of West Hartford intervened in this action as a party plaintiff pursuant to General Statutes § 31-293 (a).

[2] In addition to the named defendant, the town of West Hartford and Peter Tierinni are also named as defendants in this action.

[3] The trial court also granted summary judgment for the defendants with respect to the plaintiff's allegations of wilful or malicious conduct. The plaintiff does not challenge this ruling on appeal.

[4] "[General Statutes] Sec. 31-293a. NO RIGHT AGAINST FELLOW EMPLOYEE; EXCEPTION. If an employee or, in case of his death, his dependent has a right to benefits or compensation under this chapter on account of injury or death from injury caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee or dependent and no action may be brought against such fellow employee unless such wrong was wilful or malicious or the action is based on the fellow employee's negligence in the operation of a motor vehicle as defined in sec-

agree with the trial court that there is no genuine issue
as to any material fact and that the tractor involved
in this case is not a motor vehicle for purposes of
§ 31-293a, we affirm the judgment of the trial court.

The affidavits and other materials submitted by the
parties accompanying and opposing the motions for
summary judgment, taken in the light most favorable
to the plaintiff, revealed the following pertinent facts.
On June 18, 1987, the plaintiff Artur Pinheiro was
employed by the West Hartford board of education as
a daytime custodian at William H. Hall High School
in West Hartford. On that day, Pinheiro was a pas-
senger on a Red Seal tractor, model number DN6,
SN-210, being driven by the defendant Peter Tierinni,
also an employee of the West Hartford board of edu-
cation. Pinheiro and Tierinni were crossing the high
school grounds to do landscaping in preparation for a
graduation ceremony. The usual route was through the
parking lot and up the driveway. On this date, how-
ever, they could not take that route because other work-
ers and students preparing for the graduation
ceremony were in the way. To go around those work-
ers and students, Tierinni drove the tractor off the
driveway and over a curb. As the tractor went over

tion 14-1. For purposes of this section, contractors' mobile equipment such
as bulldozers, powershovels, rollers, graders or scrapers, farm machinery,
cranes, diggers, forklifts, pumps, generators, air compressors, drills or other
similar equipment designed for use principally off public roads are not 'motor
vehicles' if the claimed injury involving such equipment occurred at the work-
site on or after October 1, 1983. No insurance policy or contract shall be
accepted as proof of financial responsibility of the owner and as evidence
of the insuring of such person for injury to or death of persons and dam-
age to property by the commissioner of motor vehicles required by chap-
ter 246 if it excludes from coverage under such policy or contract any agent,
representative or employee of such owner from such policy or contract.
Any provision of such an insurance policy or contract effected after July 1,
1969, which excludes from coverage thereunder any agent, representative
or employee of the owner of a motor vehicle involved in an accident with
a fellow employee shall be null and void."

the curb, Pinheiro was thrown off and run over. Pinheiro sustained injuries to his left leg and foot as a result of the accident.

During the course of his employment, Pinheiro rode on and drove the tractor involved in this case across the grounds of the high school and on the driveways, parking lots, sidewalks and streets surrounding the school. The tractor was operated on nearly a daily basis. It was used to transport property and equipment, and often pulled a low trailer behind it. Frequently, when the tractor was being operated, there were students around. The operator of the tractor would often have to go around the students or stop to avoid striking them.

Notwithstanding its use, the tractor involved in this case is not suitable for operation on the highways of the state of Connecticut and can not be registered for such purpose for the following reasons: (1) It does not satisfy the minimum speed requirements set by department of motor vehicle regulations; (2) it is not equipped with turn signal lights as required by General Statutes § 14-96e; (3) it is not equipped with rearview mirrors as required by General Statutes § 14-99; (4) it is not equipped with a windshield as required by General Statutes § 14-99f; (5) it is not equipped with fenders or other wheel protectors as required by General Statutes § 14-104; (6) it is not equipped with brakes on all wheels as required by General Statutes § 14-80h (b); (7) it is not equipped with a parking brake system that is so constructed that failure of any one part of the service brake operating mechanism will leave it with braking ability on at least two wheels as required by General Statutes § 14-80h (d); (8) it is not equipped with an exhaust system that exhausts behind the driver's seat as required by General Statutes § 14-80 (d); (9) it is not equipped with stop lights as required by General Statutes § 14-96e; (10) it is not equipped with parking lights

on the left side in the rear as required by General Statutes § 14-96*l* (a); (11) it is not equipped with two tail lamps as required by General Statutes § 14-96c; and (12) it is not equipped with a suspension (springs) at each wheel as required by department of motor vehicle regulations.

The trial court rendered summary judgment for the defendants after concluding that the unsuitability of the tractor for operation on a highway and the statutory definition of a motor vehicle prevented the plaintiff from successfully claiming that the alleged negligence related to the operation of a motor vehicle so as to fall within the exception contained in § 31-293a.

" 'The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Pursuant to Practice Book § 384, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact'; (internal quotation marks omitted) *Connecticut Bank & Trust Co.* v. *Carriage Lane Associates,* 219 Conn. 772, 780–81, 595 A.2d 334 (1991); *D.H.R. Construction Co.* v. *Donnelly,* 180 Conn. 430, 434, 429 A.2d 908 (1980); 'it [is] incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists.' *Connell* v. *Colwell,* 214 Conn. 242, 251, 571 A.2d 116 (1990). 'The presence . . . of an alleged adverse claim is not sufficient to defeat a motion for summary judgment.' *Farrell* v. *Farrell,* 182 Conn. 34, 39, 438 A.2d 415 (1980); *Real Estate Auctions, Inc.* v. *Senie,* 28 Conn. App. 563, 567, 611 A.2d 452 (1992). Moreover, '[i]n deciding a motion for summary judgment,

the trial court must view the evidence in the light most favorable to the nonmoving party.' (Internal quotation marks omitted.) *Connecticut Bank & Trust Co.* v. *Carriage Lane Associates,* supra, 781, quoting *Strada* v. *Connecticut Newspapers, Inc.,* 193 Conn. 313, 317, 477 A.2d 1005 (1984)." *Wadia Enterprises, Inc.* v. *Hirschfeld,* 224 Conn. 240, 246–47, 618 A.2d 506 (1992). The dispute between the parties here does not arise out of contested versions of the facts, but out of the legal significance of the facts as they relate to relevant statutory definitions. We now consider those statutory definitions as they apply to the facts of this case.

Section 31-293a provides that when the workers' compensation remedy is available for an injury caused by the negligence or wrong of a fellow employee, that remedy is exclusive and "no action may be brought against such fellow employee *unless* such wrong was wilful or malicious or *the action is based on the fellow employee's negligence in the operation of a motor vehicle as defined in section 14-1.*" (Emphasis added.) The purpose of the motor vehicle exception to the exclusive remedy provision of the workers' compensation law is "to distinguish 'simple negligence on the job' from negligence in the operation of a motor vehicle. Unlike the special hazards of the work place, the risk of a motor vehicle accident is a common danger to which the general public is exposed. Particular occupations may subject some employees to a greater degree of exposure to that risk. The nature of the risk remains unchanged, however, and in many employments it is no greater than for the general public. The legislature has chosen, therefore, not to extend the immunity given to fellow employees by § 31-293a to accidents having a less distinct relationship to the hazards of the employment. At the same time it has accorded the injured employee, in addition to workers' compensation, the same remedy he would have against

a member of the general public who caused a motor vehicle accident." *Dias* v. *Adams,* 189 Conn. 354, 359–60, 456 A.2d 309 (1983).

The definition of motor vehicle for purposes of the motor vehicle exception to § 31-293a is controlled by the definition of motor vehicle in General Statutes § 14-1. General Statutes (Rev. to 1987) § 14-1 (30) (now § 14-1 [a] [47])[5] defines "motor vehicle" broadly as meaning "any vehicle propelled or drawn by any non-muscular power," but excepts various vehicles named specifically including a category of vehicles referred to as "special mobile equipment as defined in subsection (i) of section 14-165 and any other vehicle not suitable for operation on a highway."

General Statutes § 14-165 (i)[6] expressly defines special mobile equipment to mean "a vehicle not designed for the transportation of persons or property upon a

---

[5] At the time of the injuries involved in this case, General Statutes (Rev. to 1987) § 14-1 (30) provided: " 'Motor vehicle' means any vehicle propelled or drawn by any nonmuscular power, except aircraft, motor boats, road rollers, baggage trucks used about railroad stations or other mass transit facilities, electric battery-operated wheel chairs when operated by physically handicapped persons at speeds not exceeding fifteen miles per hour, golf carts operated on highways solely for the purpose of crossing from one part of the golf course to another, golf cart type vehicles operated on roads or highways on the grounds of state institutions by state employees, agricultural tractors, farm implements, such vehicles as run only on rails or tracks, self-propelled snow plows, snow blowers and lawn mowers, when used for the purposes for which they were designed and operated at speeds not exceeding four miles per hour, whether or not the operator rides on or walks behind such equipment, bicycles with helper motors as defined in section 14-286, special mobile equipment as defined in subsection (i) of section 14-165 and any other vehicle not suitable for operation on a highway."

In 1990, the above definition was renumbered to General Statutes § 14-1 (a) (47) without any change in its text. In this opinion, we will refer to § 14-1 (a) (47) as the statutory definition of motor vehicle.

[6] General Statutes § 14-165 (i) provides: " 'Special mobile equipment' means a vehicle not designed for the transportation of persons or property upon a highway and only incidentally operated or moved over a highway, including but not limited to ditch-digging apparatus, well-boring

highway and only incidentally operated or moved over a highway, including but not limited to . . . tractors other than truck tractors . . . . The term does not include house trailers, dump trucks, truck-mounted transit mixers, cranes or shovels, or other vehicles designed for the transportation of persons or property to which machinery has been attached." The trial court concluded that the tractor involved here was specifically included in the definition of special mobile equipment. Notwithstanding the specific inclusion of tractors in the definition of special mobile equipment, the plaintiff argues that because the tractor in this case was regularly used for transporting equipment and supplies and because it often pulled a trailer, it must be deemed to have been "designed for the transportation of . . . property to which machinery has been attached" and therefore excluded from the definition of special mobile equipment. The plaintiff also argues that the driveways and parking lots at Hall High School qualify as a "highway" pursuant to General Statutes § 14-1 (18) (now § 14-1 [a] [34]) and that the regular use of the tractor thereon cannot be characterized as only incidental operation or movement over a highway.

Although there is support for the view that the definition of special mobile equipment is limited to construction equipment; see *Ferreira* v. *Pisaturo,* 215 Conn. 55, 57, 573 A.2d 1216 (1990); and may turn on the question of whether a particular vehicle is used more than incidently on a highway; see *Ferreira* v. *Pisaturo,* 41 Conn. Sup. 326, 350, 574 A.2d 1324 (1989), aff'd, 215

apparatus and road construction and maintenance machinery such as asphalt spreaders, bituminous mixers, bucket loaders, tractors other than truck tractors, ditchers, leveling graders, finishing machines, motor graders, road rollers, scarifiers, earth moving carry-alls and scrapers, power shovels and drag lines, and self-propelled cranes and earth moving equipment. The term does not include house trailers, dump trucks, truck-mounted transit mixers, cranes or shovels, or other vehicles designed for the transportation of persons or property to which machinery has been attached."

Conn. 55, 573 A.2d 1216 (1990); we need not resolve whether the tractor involved here is excluded from the definition of a motor vehicle as special mobile equipment. Even if the plaintiff correctly argues that the tractor is not special mobile equipment, it is still excluded from the statutory definition of a motor vehicle if it is "any other vehicle not suitable for operation on a highway." General Statutes § 14-1 (a) (47).

The tractor involved here lacks various equipment required for registration of a motor vehicle. General Statutes § 14-12 requires that a vehicle must be registered before it can be operated on a highway. The trial court concluded that if a vehicle is not suitable for registration, it is "not suitable for operation on a highway" and is therefore excluded from the statutory definition of a motor vehicle.

The plaintiff argues that this is a flawed reading of the definition of motor vehicle. He claims that suitability for operation on a highway cannot be made dependent on compliance with the motor vehicle registration requirements. Otherwise, even an automobile that fails to meet one of the equipment-related registration requirements could be deemed to be unsuitable for operation on a highway and therefore not a motor vehicle.[7] The plaintiff further argues that the use of the tractor

---

[7] In his brief, the plaintiff supports this argument with the following hypothetical: "Assume that all facts were identical to those presented, but that the injuries were caused, not by the tractor, but by an automobile (a typical passenger automobile). Assume further that the automobile was unregistered, because it failed to meet one of the equipment-related registration requirements set forth in General Statutes § 14-12 (h), that is, it was not 'equipped with a horn in good working order and capable of emitting sound audible under normal conditions from a distance of not less than two hundred feet.' [General Statutes] § 14-80 (e). Given the trial court's analysis, the injured worker would be unable to maintain an action against his fellow employee because the automobile that caused his injuries failed to meet the motor vehicle registration requirements and was thus 'not suitable for operation on a highway.' It is inconceivable that the legislature intended such a result."

on a highway comprised of the driveways and parking lots at Hall High School rebuts the conclusion that the tractor is not suitable for operation on a highway. We believe, however, that both of the plaintiff's arguments miss the mark.

The phrase "any other vehicle not suitable for operation on highway" must be understood by reference to the specifically enumerated vehicles that precede it, which are also excluded from the definition of a motor vehicle. Under the rule of statutory construction known as ejusdem generis, "where a particular enumeration is followed by general descriptive words, the latter will be understood as limited in their scope to matters and things of the same general kind or character as those specified in the particular enumeration, unless there is something to show a contrary intention. . . . When no such contrary intent appears, the general words will be construed with reference to the context, and the specific terms with which the general are associated in the context will control the meaning to be given to the more general expression used in their immediate connection." (Citations omitted.) *Easterbrook* v. *Hebrew Ladies Orphan Society,* 85 Conn. 289, 296, 82 A. 561 (1912); see also *Eastern Connecticut Cable Television, Inc.* v. *Montville,* 180 Conn. 409, 413, 429 A.2d 905 (1980); *Hartford Electric Light Co.* v. *Wethersfield,* 165 Conn. 211, 217–18, 332 A.2d 83 (1973). Most of the enumerated vehicles specifically excluded from the definition of motor vehicle in § 14-1 (a) (47) are certainly capable of being operated on a highway but are nonetheless not suitable for such use because of their design. See, e.g., *Ferreira* v. *Pisaturo,* supra, 41 Conn. Sup. 338–47 (special mobile equipment can operate on a highway for a limited purpose, but such vehicles are still not suitable for operation on a highway because they are not designed for such use). It is therefore the

vehicle's *design* that controls in determining whether a particular vehicle is suitable for operation on a highway and qualifies as a motor vehicle. Id., 346. Consequently, an automobile that is not registered because its equipment is in disrepair, as suggested by the plaintiff's hypothetical; see footnote 7, supra; is still a motor vehicle for purposes of § 14-1 and is still suitable for operation on a highway, although perhaps not permitted to be so operated until necessary repairs are made, because it is an automobile by design. The tractor involved in this case, by contrast, does not incorporate in its design many equipment items necessary for its registration and hence its suitability for operation on a highway. Under the statute, the mere fact that the tractor was operated on a highway at various times and is therefore capable of doing so does not mean that it is a motor vehicle for purposes of § 14-1 (a) (47). See *Ferreira* v. *Pisaturo,* supra, 41 Conn. Sup. 340–41, 346–47.[8] Consequently, the tractor involved in this case is not a motor vehicle for purposes of § 31-293a.

Because the tractor being operated by the plaintiff's fellow employee at the time of the injury was not a "motor vehicle," the alleged negligence in this case did not relate to the operation of a motor vehicle so as to

[8] The trial court likewise properly rejected the plaintiff's argument that the defendants are estopped to deny that the tractor is a motor vehicle because they induced him to believe that the tractor was suitable for operation on the highway by requiring him to use the tractor on the school grounds. The court correctly concluded that this argument "disregards the language of [§ 14-1 (a) (47)], which defines motor vehicle in terms of suitability for operation on a highway, rather than use on a highway." Similarly, the plaintiff's arguments based on the policy underlying the motor vehicle exception; see *Dias* v. *Adams,* 189 Conn. 354, 359–60, 456 A.2d 309 (1983); must fail in light of the intent expressed by the words of the statute. Our interpretation of those words does not frustrate the statutory purpose, and we note that "[a]ny change in the words of the statute . . . must come from the legislature." *Vecca* v. *State,* 29 Conn. App. 559, 565, 616 A.2d 823 (1992).

escape the bar of § 31-293a against such actions. Accordingly, the trial court properly rendered summary judgment for the defendants.

The judgment is affirmed.

In this opinion the other judges concurred.