## DONNA J. EAST *v.* LISA M. LABBE ET AL.

| Superior Court | Judicial District of Tolland | File No. 95 58910 S |
|---|---|---|

Memorandum filed March 9, 1998*

---

* Affirmed. *East* v. *Labbe*, 54 Conn. App. 479, 735 A.2d 370 (1999).

*Regnier, Taylor, Curran & Eddy,* for the plaintiff.

*Morrison, Mahoney & Miller,* for the named defendant.

*Letizia & Ambrose,* for the intervening plaintiff.

L. SULLIVAN, J. This is a negligence action seeking damages for personal injuries allegedly caused when a golf cart in which the plaintiff, Donna J. East, was riding as a passenger and operated by the named defendant, Lisa M. Labbe,[1] allegedly went out of control, causing the plaintiff to be thrown from the golf cart. The plaintiff and the defendant were allegedly coworkers in the employ of Easter Seal Society, Inc. (Society). The accident occurred on a path of the property owned by the Society. The accident occurred in the course of employment. The plaintiff is entitled to workers' compensation benefits from Society, which is no longer a party defendant in this action.

The defendant moves for summary judgment in this action. The defendant claims that the provisions of General Statutes § 31-293a bar the plaintiff from prosecuting this action against her. General Statutes § 31-293a provides in relevant part: "No right against fellow employee; exception. If an employee . . . has a right to benefits or compensation under this chapter on account of injury . . . caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee . . . unless such wrong was wilful or malicious or the action is based on the fellow employee's negligence in the operation of a motor vehicle as defined in section 14-1. . . ."

---

[1] The intervening plaintiff, Easter Seal Society, Inc., was originally named as a defendant. Its motion for summary judgment in that capacity was granted without objection. We refer in this opinion to Lisa M. Labbe as the defendant.

It is noted that this action, as presently pleaded, is in a single count alleging negligence. On March 1, 1996, a second count alleging reckless and wanton misconduct was stricken by this court, *Hammer, J.*

## I

The Appellate Court in *Pinheiro* v. *Board of Education*, 30 Conn. App. 263, 620 A.2d 159 (1993), dealt with a question similar to that presented to this court. *Pinheiro* involved a circumstance whereby the injured coemployee was a passenger on a Red Seal tractor being operated by another employee on the grounds of Hall High School in West Hartford. The *Pinheiro* court first determined that the tractor was not suitable for operation on state highways and cannot be registered because the vehicle does not satisfy minimum speed requirements and is not equipped with turn lights, rear view mirrors, a windshield wiper, fenders or wheel protectors, brakes on all wheels, a proper parking brake system, a proper stop light, parking lights, two tail lamps and suspension (springs) at each wheel as required by department of motor vehicle regulations. Id., 266–67. All but the last of these deficiencies related to the absence of equipment required of motor vehicles in order for the vehicle to be registered for, and to be operated on, public highways.

The *Pinheiro* court does not adopt a simplistic test or criteria based on the question of whether a specific individual vehicle is capable of being registered. The court states that "an automobile that is not registered because its equipment is in disrepair . . . is still a motor vehicle for purposes of [General Statutes] § 14-1 . . . although perhaps not permitted to be so operated until necessary repairs are made, because it is an automobile by *design*." (Emphasis added.) Id., 273. "[S]pecial mobile equipment can operate on a highway

for a limited purpose, but such vehicles are still not suitable for operation on a highway because they are not *designed* for such use . . . ." (Emphasis added.) Id., 272. "The tractor involved in this case . . . does not incorporate in its design many equipment items necessary for its registration and hence its suitability for operation on a highway." Id., 273.

The defendant submits two affidavits in this case. John Yacavone, chief of legal services for the department of motor vehicles, states that "a golf cart is not registerable as a motor vehicle in the State of Connecticut, as a golf cart is not meant for on-the-road operation. Under the laws of the State of Connecticut a motor vehicle as defined in Connecticut General Statutes § 14-1 must have . . . ." The affidavit then lists twelve items of equipment which are not included on golf carts and which are required by statute. It also refers to § 14-103b-2 (f) of the regulations of the department of motor vehicles, which requires the vehicle to have a sustainable speed capability of forty miles per hour.

The second affidavit is by Charles Dickinson, assistant director of building and grounds for the Easter Seal Society's Camp Hemlock in Hebron. He affirms that the golf cart in question is not equipped with ten of the eleven items of equipment required by law for registration, as specified by Yacavone, listing each such deficiency, from head lamps through tail lamps.

The plaintiff files no counteraffidavit to take issue with the affidavit of either Yacavone or Dickinson. On the basis of the criteria set forth in *Pinheiro*, it is clear that this vehicle is not designed for use on the highway. There is no reason to believe that the necessary equipment was incorporated in this golf cart vehicle, but was merely not functioning, or in disrepair.

Hence, as determined in *Pinheiro*, this golf cart would not be a motor vehicle for the purposes of § 31-293a, as the vehicle is not suitable for operation on the highway because it is not designed for such use.

## II

The plaintiff takes the position that golf carts, while being operated off the highway for purposes other than to cross from one side to the other, or other than when being operated on roads or highways or the grounds of state institutions by state employees, are in fact motor vehicles and hence, the plaintiff claims, the immunity from suit by a fellow employee, pursuant to § 31-293a, is inapplicable.

The argument proceeds as follows. Because § 31-293a refers to § 14-1 for the definition of motor vehicle and because § 14-1 (47) excludes from the definition of motor vehicle golf carts when being operated under certain circumstances, to wit "golf carts operated on highways solely for the purpose of crossing from one part of the golf course to another, golf cart type vehicles operated on roads or highways on the grounds of state institutions by state employees, agricultural tractors [etc.]" then the golf cart, when being operated under other than such circumstances must be a motor vehicle and therefore is exempt from the immunity provided by § 31-293a.

Following that line of reasoning, golf carts would be motor vehicles as they approach the public highway, would lose the character of motor vehicles as they cross the highway, and would then again become motor vehicles after they have crossed the highway. Hence, the fellow employee would have a cause of action against the fellow employee operator if the occurrence took place before or after crossing the highway, but not if the incident occurred on the highway. The court can discern no indication from the legislative history of the

applicable statutes that the legislature either contemplated or intended such an irrational result.

A review of the legislative history of § 31-293a is appropriate. Prior to the enactment of § 31-293a, there existed no statutory prohibition against employees asserting a common-law cause of action in negligence against a fellow employee for personal injuries incurred in the course of employment. The common-law "fellow servant doctrine" insulated *the employer* from claims, arising out of agency, where an employee negligently injured a fellow employee—a "fellow servant." No such common-law or statutory immunity existed as concerns claims between fellow employees.

Section 31-293a was enacted in 1967, by Public Acts 1967, No. 842, § 5. The legislative history is both brief and direct. Representative Paul Pawlak, on behalf of the labor committee, stated as follows: "This section stops third party suits against fellow employees since such employee usually is unable to meet any judgment involving serious injuries. However, the section specifically permits suits against fellow employees where the injury or death was the result of wilful or malicious wrong by such fellow employee or involves the operation of a motor vehicle. We are here trying to make sure that a fellow employee cannot ordinarily be sued for simple negligence on the job, but we do not believe that he should be protected against wilful or malicious wrong, nor do we believe he should be protected if the employee is injured as a result of a motor vehicle accident." 12 H.R. Proc., Pt. 9, 1967 Sess., p. 4035.

If there is any question as to why motor vehicle accidents are excluded from such immunity, which of course do not necessarily produce more severe injury than do other types of negligent conduct involving other types of mechanisms, such questions are answered by the statute itself. "No insurance policy or contract shall

be accepted as *proof of financial responsibility* of the owner and as evidence of the insuring of such person for injury to or death of persons and damage to property . . . if it excludes from coverage . . . any agent, representative or any employee of such owner from such policy or contract." (Emphasis added.) General Statutes § 31-293a. More particularly: "Any provision of *such* an insurance policy or contract effected after July 1, 1969, which excludes from coverage thereunder any agent, representative or employee of the owner of a motor vehicle involved in an accident *with a fellow employee shall* be null and void." (Emphasis added.) General Statutes § 31-293a. This latter provision concerning motor vehicle insurance coverage appears to have first been included in 1969, as a provision of Public Acts 1969, No. 696, § 4.

In 1969 the legislature, through Public Acts 1969, No. 569, § 1, also amended § 14-1 to exclude from the definition of "motor vehicle" golf carts operated on the public highway "solely for the purpose of crossing from one part of the golf course to another . . . ." (The other exclusions, "willful and malicious" and "roads or highways on the grounds of state institutions by state employees" are not relevant to the circumstances of this action.)

The legislative history reveals that the purpose of enacting that legislation was to allow golf carts to cross from one side of the golf course to another, and to allow them to be operated on the roads of state institutions. Representative Edgar King remarked: "[M]y town in Farmington has a golf course which is divided by a highway and presently those cars cannot cross from one part of the course to the other part unless they are registered by the Motor Vehicle department and the same problem is in many areas of our state." Conn. Joint Standing Committee Hearings, Transportation, 1969 Sess., p. 243.

Similarly, because hospital roads were considered to be within the definition of "highway," Pauline Alfano spoke on behalf of the department of public health in favor of a 1983 bill because the department wanted to be able to use golf carts on the roads within their facilities for transportation purposes. Conn. Joint Standing Committee Hearings, Transportation, Pt. 3, 1983 Sess., pp. 777–78. There is no indication in any of the legislative history that these amendments were intended to have any effect on the provisions of § 31-293a.

At that time, as is presently the case, motor vehicles were absolutely prohibited from being operated on the public highway unless the vehicle was registered with the commissioner of motor vehicles, or unless it was excluded from registration by virtue of its being excluded as a "motor vehicle" under the definitions of § 14-1 (47).

General Statutes § 14-12 (a) provides in relevant part: "No motor vehicle shall be operated or towed on any highway, except as otherwise provided, unless it is registered with the commissioner . . . ." Although a golf cart may comply with the minimum criteria of a motor vehicle, as does any other vehicle "propelled or drawn by any nonmuscular power"; General Statutes § 14-1 (47); yet absent statutory permission it would be a criminal act to operate such vehicle on a highway, because it could not be registered even if its stock rudimentary equipment was in proper working order.

Many other types of motor vehicles, vehicles not "propelled or drawn by any nonmuscular power," are determined by § 14-1 (47) not to be "motor vehicles," i.e., aircraft, motorboats, road rollers, baggage trucks, electrically operated wheel chairs and the like. Declaring such motor vehicles not to be motor vehicles, however, does not change the mechanical composition of the device. It merely allows the exempted generic "motor

vehicle" to be operated on the highways for their inherent limited purposes, and subject to certain conditions, such as rates of speed. Otherwise they could not be operated on the public highway under any circumstances because, by their design, lacking essential safety equipment, they could not be registered. General Statutes § 14-12a. The golf cart exception of § 14-1 (47) is even more limited than is the use of such other vehicles, as carts may only use the highway for the limited purpose of traveling from one side of the highway to the other, whereas other such "non-motor vehicles" are allowed to travel laterally down the highway.

The purpose, the only purpose, of the golf cart exception contained in § 14-1 (47) is to allow the vehicle to be operated on the highway for very limited purposes, as set forth in the statute. It does not, and was not intended, to create a special exception to § 31-293a. No such exception exists either in common sense, rational reasoning, or legislative history.

Finally, these statutes must be read in the context of the proof of financial responsibility requirements of § 31-293a. General Statutes § 14-12b (a) provides in relevant part: "No motor vehicle registration shall be issued by the commissioner for any private passenger motor vehicle . . . or a vehicle with a commercial registration . . . unless (1) the application for registration is accompanied by a current automobile insurance identification card of a current insurance policy . . . verifying that the applicant has the required security coverage . . . ." General Statutes § 31-293a provides in relevant part: "No insurance policy or contract shall be accepted as proof of *financial responsibility* . . . ." (Emphasis added.) That statute then provides: "Any provision of *such* an insurance policy or contract effected after July 1, 1969, which excludes from coverage thereunder any agent, representative or employee of the owner of a motor vehicle involved in an accident

with a fellow employee shall be null and void." (Emphasis added.) General Statutes § 31-293a.

This court can discern no statute or regulation that requires an employer to maintain any liability insurance whatsoever on any "motor vehicle" (a vehicle drawn or propelled by nonmuscular power) that is of a *design* that does not qualify for registration by the department of motor vehicles. It is only through the discipline of § 14-12 (a) in connection with the *mandatory* security requirements of § 14-12b (a) together with the provisions of § 31-293a imposed upon the owner that the employee is protected through mandatory security requirements from the economic catastrophe of being an uninsured person in coemployee claims. Although such protection is not infallible, as circumstances do exist whereby employers, in violation of the statute may allow motor vehicle liability policies to lapse, which is a violation of General Statutes § 14-12c, or may not register the highway type vehicle at all, yet it does provide *reasonable* assurance that the employee, who has no control over the employer's coverage, will not be placed in the same uninsurable financial jeopardy as existed prior to the enactment of § 31-293a, in the event of a highway vehicle accident causing injury to a fellow employee.

Nowhere does it appear that the legislature has determined that golf carts are motor vehicles which are or are intended to be exempt from protective provisions of § 31-293a when they are operated in either a highway crossing, or in a nonhighway crossing capacity as is the circumstance of the present case. It is clear from the documentary evidence submitted herewith that this particular golf cart is "not suitable for operation on a highway because it is not designed for such use . . . ." *Pinheiro* v. *Board of Education*, supra, 30 Conn. App. 272.

It should be noted that this case deals with the interpretation of statutory provisions. Uninsured motorist claims under the provisions of insurance contracts deal with contract definitions. There is nothing to prevent insurance contracts providing first party benefits, from using nonstatutory terms in defining "motor vehicles." See *Norfolk & Dedham Mutual Fire Ins. Co.* v. *Wysocki*, 243 Conn. 239, 241, 702 A.2d 638 (1997).

The plaintiff appears to claim that the language of § 14-1 (47) is clear and unambiguous, and therefore requires no statutory interpretation. It is claimed that because golf carts are specifically referred to in several phrases of the statute that the last phrase of § 14-1 (47), "and any other vehicle not suitable for operation on the highway," is inapplicable to golf carts. The court does not agree with the proposition that statutory interpretation is precluded by the mere mention of golf carts as one of the enumerated vehicles that are allowed to use the highways under certain limited circumstances, or for use within their traditional limited functions. Quite to the contrary that latter phrase would indicate that the enumerated vehicles, including golf carts, are in fact not suitable for general operation on the highway, and are in fact merely granted a special exemption to allow their use on the highway for such limited functional or use purposes.

At most, the plaintiff may be in a position to claim that the language of the statute is ambiguous. "[W]here the words of a statute fail to indicate clearly whether the provision applies in certain circumstances, it must be construed by this court . . . . The rules of statutory construction dictate that this court is to be guided by the language, purpose and legislative history of the statute in question." (Citations omitted; internal quotation marks omitted.) *Vanzant* v. *Hall*, 219 Conn. 674, 682, 594 A.2d 967 (1991).

"We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve." (Internal quotation marks omitted.) *Concept Associates, Ltd.* v. *Board of Tax Review,* 229 Conn. 618, 624, 642 A.2d 1186 (1994).

It is clear that the legislative purpose of § 31-293a is advanced and achieved by providing workers' compensation benefits and protection to the injured employee, while at the same time offering to the coemployees, many of whom are citizens of little or modest means, protection against the jeopardy of being "unable to meet any judgment involving serious injuries." 12 H.R. Proc., supra, p. 4035, remarks of Representative Pawlak. There is simply no rational reason why, and no legislative history to indicate, that the legislature did or intended to treat golf carts in a fashion different from any other nonhighway type mechanism for the purposes of the immunity statute, § 31-293a. Allowing limited use of the highway does not alter that conclusion.

For the reasons set forth herein the motion for summary judgment is granted.