[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On the Fourth of July, 1995, at about 2:39 in the morning, the plaintiff, James Kelly (Kelly), was riding on the back of a golf cart operated by the defendant, Joseph V. Rossi (Rossi), a fellow employee of Southern Connecticut State University (SCSU) The golf cart was not roaming a golf course but was traveling on a public street not far from the SCSU campus. Kelly was thrown off. He suffered injuries of a serious, painful and permanent nature.
Kelly has filed a seven count complaint against Rossi, SCSU and the defendant Ron's Golf Cart Rental, Inc. (Ron's Golf Cart), the alleged owner and lessor of the golf cart. Counts one and four are directed at Rossi and allege that he negligently operated the golf cart. In count two, Kelly asserts that Rossi recklessly operated the cart. In count three, Kelly brings a claim against SCSU under General Statutes §52-556.[1] In counts five and six, Kelly brings a claim against Ron's Golf Cart under General Statutes § 14-154a.[2] In count seven, Kelly alleges that Ron's Golf Cart was negligent.
Both SCSU and Rossi have filed answers in which they assert the special defense that Kelly's personal injury action is barred by the exclusivity provisions of the Workers' Compensation Act (the Act). See General Statutes §§ 31-284(a),[3] 31-293a.[4] All three defendants now move for summary judgment.
Practice Book § 17-49 "provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material [fact] which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Rivera v. Double A Transportation, Inc., 248 Conn. 21, 24,727 A.2d 204 (1999). CT Page 6380
 I
Rossi moves for summary judgment on the ground that the provisions of the Worker's Compensation Act, specifically General Statutes § 31-293a, bar the plaintiff from bringing an action against him sounding in negligence or recklessness because he and Kelly were fellow employees.
In count one, Kelly alleges that his injuries are the result of Rossi's negligent operation of the golf cart in violation of General Statutes §§ 14-219, 14-227a, 14-250a and 14-257.[5] In count two, Kelly alleges that Rossi operated the cart in a reckless fashion in violation of General Statutes §§ 14-222[6] and 14-227a. In count four, Kelly realleges the allegations made in count one, but under the common law.
In support of his argument that he and Kelly were fellow employees and that Kelly's negligence action is precluded by General Statutes §31-293a, Rossi submits the affidavit of Richard Faricelli (Faricelli), the Associate Dean of Student Affairs at SCSU. In his affidavit, Faricelli states that at the time of the injury, both Kelly and Rossi were employees of SCSU; that SCSU employees are commonly understood to be able to travel off the campus for refreshments or snacks; and that such travel is considered to be incidental to employment. In addition, Rossi submits Kelly's certified deposition testimony in which Kelly testified that he was an employee of SCSU and that at the time of the injury, he was still on duty as he had not checked out for the night. Rossi also submits his own deposition testimony in which he testified that as director of Schwartz Hall at SCSU, he was on call 24 hours a day and seven days a week.
Kelly argues in opposition that a material issue of fact exists as to whether he was acting within the scope of his employment when the accident occurred in the early morning hours of July 4, 1995. In support, Kelly submits his own affidavit in which he states that on July 3, 1995, he completed his work day at 11:30 p.m. and that he had no intention of returning to work until the following morning at 8 a.m. He testifies that from approximately 11:30 p.m. until 1:30 a.m., he was watching cartoons in his room and that he was planning to go to bed after getting something to eat. He concludes that he was not acting within the scope of his employment when he rode with Rossi to get something to eat. Kelly also argues that a material issue of fact exists as to whether the golf cart was a motor vehicle for purposes of applying General Statutes §31-293a.
General Statutes § 31-293a provides: "If an employee . . . has a right to benefits or compensation under [the Workers' Compensation Act] CT Page 6381 on account of injury or death from injury caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee or dependent and no action may be brought against such fellow employee unless such wrong was wilful or malicious or the action is based on the fellow employee's negligence in the operation of a motor-vehicle as defined in section 14-1."
An employee has the right to worker's compensation benefits if the employee's "injury is causally connected to the employment. To prove causal connection, a plaintiff must demonstrate that the injury claimed (1) arose out of the employment, and (2) in the course of the employment. . . . Proof that the injury arose out of the employment relates to the time, place and circumstances of the injury. . . . Proof that the injury occurred in the course of the employment means that the injury must occur (a) within the period of the employment; (b) at a place the employee may reasonably be; and (c) while the employee is reasonably fulfilling the duties of the employment or doing something incidental to it." (Citations and internal quotation marks omitted.) Crochiere v.Board of Education, 227 Conn. 333, 349, 630 A.2d 1027 (1993).
There is a genuine issue of material fact as to all of these criteria and, hence, as to whether Kelly's injuries arose out of and in the course of his employment. While Kelly testified in his deposition that he had not checked out from work on the night of the accident, he also testified that he ended his work day at 11:30 p.m. on July 3, 1995, the night before the accident on July 4, 1995. Thus, his testimony does not resolve questions of fact as to whether the accident arose out of his employment. In addition, while Faricelli testified that SCSU employees who travel off campus for snacks are still acting within the scope of their employment, this testimony does not resolve the issues of fact as to why such travel off campus "arises out of employment" or "[fulfills] the duties of the employment or . . . [is] incidental to it." The court cannot conclude as a matter of law that Kelly was acting within the scope of his employment; thus, it cannot conclude that Kelly's exclusive remedy is to be found in the Workers' Compensation Act. Because the question of whether Kelly was acting within the scope of his employment is a threshold requirement for application of General Statutes §31-293a, the court denies Rossi's motion for summary judgment as to counts one, two and four to the extent that the motion is based on General Statutes § 31-293a.
 II
In count three, Kelly brings a claim against SCSU under General Statutes § 52-556, which imposes liability on a state entity based on its employee's negligent operation of a motor vehicle. SCSU moves CT Page 6382 for summary judgment on count three on the basis that (1) the golf cart was not owned by the State, (2) the golf cart is not a motor vehicle within the ambit of General Statutes § 52-556, and (3) the plaintiff, who was a state employee at the time of the accident, cannot sue the State under that statute.
In support of its argument that the subject golf cart is not a motor vehicle as defined by General Statutes § 52-556, SCSU submits the affidavit of John Yacavone (Yacavone), the chief of legal services for the department of motor vehicles (DMV) who testified that the DMV does not consider golf carts to be motor vehicles because they (1) lack the characteristics of motor vehicles as set forth in General Statutes §14-1; (2) cannot be registered;[7] and (3) they are not meant for on the road operation. SCSU also submits the certified deposition testimony of Scott Lowe (Lowe), the vice president of Bruedan Corporation, the exclusive distributor of E-Z-Go golf carts. Lowe testified that the subject golf cart is an E-Z-Go golf cart and is not considered a motor vehicle. More importantly, he testified that it lacks seat belts, a windshield and windshield wipers, parking lights and brakes on all four wheels. In addition, Lowe testified that the golf cart can only attain a maximum speed of between twelve to fourteen miles per hour.
Kelly argues in opposition that the golf cart was a motor vehicle since it was equipped with two passenger seats, an extended flat cargo bed, a gas engine, headlights, taillights, brake lights, a horn, parking brake, separate pedals for gas an brake and required a key to start it.
General Statutes § 52-556 provides that "[a]ny person injured in person or property through the negligence of any state official or employee when operating a motor vehicle owned and insured by the state against personal injuries or property damage shall have a right of action against the state to recover damages for such injury." The statute does not define the term "motor vehicle." General Statutes §14-1(47), however, defines a motor vehicle as "any vehicle propelled or drawn by any nonmuscular power, except . . . golf carts operated on highways solely for the purpose of crossing from one part of the golf course to another, golf cart type vehicles operated on roads or highways on the grounds of state institutions by state employees . . . and any other vehicle not suitable for operation on a highway. . . ."
The recent case of East v. Labbe, 46 Conn. Sup. 24, 735 A.2d 371 aff'd per curiam, 54 Conn. App. 479, 481, 735 A.2d 370 (1999), aff'd per curiam, 252 Conn. 359, 361, 746 A.2d 751 (2000), controls the issue of when a golf cart is a motor vehicle. In East v. Labbe, supra, 46 Conn. Sup. 25, an employee was injured when she was thrown from a golf cart driven by a fellow employee. Both employees were acting within CT Page 6383 the scope of their employment; id.; but the trial court held that the injured employee could not recover against her fellow employee under General Statutes § 31-293a because the golf cart was not a motor vehicle within the meaning of General Statutes § 31-293a. Id., 28. In reaching its holding, the trial court looked to Pinheiro v. Board ofEducation, 30 Conn. App. 263, 273-74, 620 A.2d 159 (1993), where the Appellate Court affirmed that a tractor was not a motor vehicle for purposes of General Statutes § 31-293a. In Pinheiro, the court noted first that the "definition of motor vehicle for purposes of . . . §31-293a is controlled by the definition of motor vehicle in General Statutes § 14-1." Id., 269. It noted second that the statutory definition of motor vehicle given in General Statutes § 14-1
excludes "special mobile equipment [such as tractors] . . . and any other vehicle not suitable for operation on a highway." Id., 269. The court reasoned that the phrase ""any other vehicle not suitable for operation on a highway' must be understood by reference to the specifically enumerated vehicles that precede [the phrase], which are also excluded from the definition of a motor vehicle." Id., 272. Applying this reasoning, the court concluded that "most of the enumerated vehicles specifically excluded from the definition of motor vehicle in § 14-1 (a) (47) are capable of being operated on a highway but are nonetheless not suitable for such use because of their design." Id. The court noted that the tractor could not be registered because it lacked turn lights, rear view mirrors, windshield wipers, fenders, brakes on all wheels, a proper braking system, a proper stop light, parking lights, two tails lamps and suspension at each wheel and the ability to attain minimum speed requirements. Pinheiro v. Board ofEducation, supra, 30 Conn. App. 266-67. The Pinheiro court concluded that "[t]he tractor . . . [did] not incorporate in its design many equipment items necessary for its registration and hence its suitability for operation on a highway." Id., 273.
The East v. Labbe court, in considering the question of whether a golf cart is a motor vehicle for purposes of General Statutes § 31-293a, examined the affidavits before it in light of Pinheiro: "[The affidavit of] John Yacavone, chief of legal services for the Connecticut department of motor vehicle states that `a golf cart is not registerable as a motor vehicle in the State of Connecticut, as a golf cart is not meant for on-the-road operation. . . . The affidavit lists twelve items of equipment which are not included on golf carts and which are required by statute. [The affidavit] also refers to § 14-103b of the regulations . . . which requires the vehicle to have a sustainable speed capability of forty miles per hour.'" East v. Labbe, supra, 46 Conn. Sup. 27. The court concluded that the "golf cart would not be a motor vehicle for the purposes of General Statutes § 14-293a, as the vehicle is not suitable for operation on the highway because it is not CT Page 6384 designed for such use." Id., 28.
As a matter of law, the golf cart is not a motor vehicle for purposes of General Statutes § 52-556 because it has "not [incorporated] in its design many equipment items necessary for its registration and hence [it is not suitable] for operation on a highway:" East v. Labbe, supra, 46 Conn. Sup. 28. Lowe testified that this golf cart lacks seat belts, a windshield, windshield wipers, parking lights and brakes on all four wheels. These items constitute five of the items which the state mandates as necessary for registration of a motor vehicle. In addition, the cart here could only travel twelve to fourteen miles per hour, inherently in violation of General Statutes § 14-220[8] and a serious menace to traffic. Because the golf cart from which the plaintiff fell has not been equipped to be registered and is not safe for highway operation, it is not suitable for operation on a highway and hence is not a motor vehicle within the meaning of General Statutes § 14-1(47). Because the definition of motor vehicle in General Statutes § 14-1, in turn, controls the definition of motor vehicle in General Statutes § 52-556, Kelly cannot meet the § 52-556
statutory prong requiring the vehicle be a motor vehicle. The court, therefore, does not reach the question of whether SCSU owns the subject golf cart because liability under General Statutes § 52-556 requires both that the vehicle be a motor vehicle and that the state entity own the motor vehicle. The court grants SCSU's motion for summary judgment as to count three.
 III
Rossi also argues that the vehicle that he operated and from which the plaintiff was thrown is not a "motor vehicle" for purposes of counts one and two, which allege that Rossi violated various statutes governing the operation of motor vehicles. See supra, section II. If General Statutes § 14-1 controls the definition of motor vehicle for purposes of counts one and two, then so does East v. Labbe, supra, 46 Conn. Sup. 24, and Rossi is correct, as discussed supra.
All of the statutes which Rossi allegedly violated are codified in chapter 248 of the General Statutes. The definitional section of that chapter, General Statutes § 14-212, provides: "Terms used in this chapter shall be construed as follows, unless another construction is clearly apparent from the language or context in which the term is used or unless the construction is inconsistent with the manifest intention of the General Assembly . . . (5) `Motor vehicle' includes all vehicles used on the public highways. . . ." In near circuitous fashion the statute defines "vehicle" as "synonymous with `motor vehicle'." General Statutes § 14-212(9).[9]
CT Page 6385
The determination of whether the golf cart here is a motor vehicle for purposes of General Statutes § 14-212 is a matter of statutory construction. "Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) Cotto v. United Technologies Corporation, 251 Conn. 1, 6,738 A.2d 623 (1999).
Looking first to the words of the statute, General Statutes § 14-212
(5) does not refer to § 14-1 nor does it contain the exclusionary language of General Statutes § 14-1 (47) which excepts, inter alia, golf carts "and any other vehicle not suitable for operation on a highway" from the definition of motor vehicle. Section 14-212 also is not limited to vehicles "normally" used on the highway. Had the legislature intended to import the definition of motor vehicle in § 14-1
(47) into chapter 248 it would have (1) expressly done so, as it did with other terms in General Statutes § 14-212[10], and elsewhere in the General Statutes[11] or (2) omitted the definition of vehicle and motor vehicle in § 14-212, adopting the definition in § 14-1
by implication. See, e.g., Doe v. Marselle, 236 Conn. 845, 861, 675 A.2d 835
(1996); Thornton Real Estate, Inc. v. Lobdell, 184 Conn. 228, 230,439 A.2d 946 (1981). It did neither. Connecticut appellate courts "consistently have stated that the legislature is presumed to have knowledge of all existing statutes and the effect that its own action or inaction may have on them." General Motors Corp. v. Dohmann, 247 Conn. 274,290, 722 A.2d 1205 (1998).
Even were the court to read the word "usually" or "suitably" into the definition of motor vehicle in General Statutes § 14-212, this would not resolve the problem. Section 14-212 provides that "`motor vehicle'includes all vehicles used on the public highways." (Emphasis added.) While the words "shall include" are often words of limitation; HartfordElectric Light Co. v. Sullivan, 161 Conn. 145, 150, 285 A.2d 352 (1971); "the statutory omission of the word `shall' is telling. Webster's Seventh New Collegiate Dictionary states that the word `include' `suggests the containment of something as a constituent, component, or subordinate part of a larger whole.'" Mahoney v. Lensink, 213 Conn. 548,569, 569 A.2d 518 (1990); see also State v. DeFrancesco, 235 Conn. 426,435-37, 668 A.2d 348 (1995). The court, however, concludes that such additional words cannot reasonably be implied into the definition of CT Page 6386 motor vehicle in § 14-212.
Second, the legislative history confirms that the definition of "motor vehicle" in General Statutes § 14-1 is not impressed onto General Statutes § 14-212. Prior to 1965, it did so. General Statutes (Rev. 1958) § 14-212 provided: "The term `vehicle,' as used in this chapter, shall apply to all vehicles used on the public highways except those which are operated upon rails or tracks. All definitions containedin the statutes concerning motor vehicles shall apply in theconstruction of this chapter unless another meaning is clearly apparent from the language or context or unless such construction is inconsistent with the manifest intention of the general assembly." (Emphasis added.) In 1965, the General Assembly deleted this provision and amended the statute to read: "The terms `vehicle' and `motor vehicle' shall, for purposes of this chapter, be synonymous and interchangeable and shall apply to all vehicles used on the public highways unless another meaning is clearly apparent from the language or context or unless such construction is inconsistent with the manifest intention of the general statutes." Feb. 1965, Spec. Sess., Public Acts No 448 § 16.[12]
Notably, while removing any implied reference to § 14-1 in § 14-212, the legislature in § 1 of this Public Act amended General Statutes § 14-1 to enumerate a number of vehicles that were excluded from the definition of motor vehicle.
Third, the legislative policy which the 1965 amendment was designed to implement is further evidence that the legislature did not intend to harmonize the definition of motor vehicle in § 14-212 with that in § 14-1. The purpose of the amendment was to "bring a number of the Connecticut motor vehicle statutes into exact or close conformity with the National Uniform Vehicle Code. It contains definitions of `motor vehicle'. . . ." Proceedings before the House of Representatives, June 4, 1965, p. 3050, Remarks of Rep. Saglio. At the time of these comments, section 1-134 of the Uniform Vehicle Code (Rev. 1962) defined a "motor vehicle" to include "[e]very vehicle which is self-propelled" with the exception of vehicles operated on rails.
It is true that statutes should be interpreted in light of existing statutes because the legislature is presumed to have created a consistent body of law. Cotto v. United Technologies Corp., supra,251 Conn. 13. The rules of statutory construction are "important guidelines to the determination of legislative meaning. To permit them to, displace the conclusions that careful interpretation yields, however, would be a disservice to the legislative process, as well as to the judicial exercise of interpreting legislative language based upon the premise that the legislature intends to enact reasonable public policies." (Internal quotation marks omitted.) State v. Brown, 242 Conn. 389, 403, CT Page 6387699 A.2d 943 (1997). Here, the evidence strongly suggests that the legislature opted to remove any suggestion that the definition of motor vehicle in General Statutes § 14-1 was imported into § 14-212
and adopted a broader definition.
For these reasons, the court concludes that the definition of motor vehicle in General Statutes § 14-212, unlike that in General Statutes § 14-1, includes a generic motor vehicle — an automotive vehicle not operated on rails; Webster's Ninth New Collegiate Dictionary (1991) — thereby including motorized vehicles not suitable for operation on the highway. The court cannot say as a matter of law that the golf cart operated by Rossi was not such a vehicle. Indeed, there appears to be no question but that it was. Moreover, the vehicle was allegedly used on a public highway.
By virtue of the prefatory language in General Statutes § 14-212, however, this broader definition of motor vehicle applies "unless another construction is clearly apparent from the language or context in which the term is used or unless the construction is inconsistent with the manifest intention of the General Assembly. . . ." This proviso does not undermine this court's construction of the term "motor vehicle" in § 14-212 with respect to the statutes which the plaintiff alleges Rossi violated. The purpose of those statutes — General Statutes §§ 14-212, 14-219, 14-219, 14-227a, 14-250a, 14-257 — is to promote the safe operation of vehicles on the public highways. Turner v.Scanlon, 146 Conn. 149, 157, 148 A.2d 334 (1959); Kostrzewski v.Commissioner of Motor Vehicles, 52 Conn. App. 326, 342, 727 A.2d 233, cert. denied, 249 Conn. 910, 733 A.2d 227 (1999) (state has a legitimate interest in highway safety and a responsibility to protect its citizens from those who would drive on its roads while under the influence of alcohol); see also Daly v. DelPonte, 225 Conn. 499, 515, 624 A.2d 876
(1993) (state's interest in highway safety is a compelling state interest). That interest is hardly diminished when the vehicle being operated is not suitable for highway use in the first place. Thus, the relationship of General Statutes § 14-212 to existing legislation, another criteria in Connecticut statutory construction; Cotto v. UnitedTechnologies Corp., supra, 251 Conn. 6; supports a broader definition of "motor vehicle" than that in § 14-1.
Since the vehicle Rossi operated was a motor vehicle within the ambit of General Statutes § 14-212, Rossi's motion for summary judgment on counts one and two of the complaint is denied.
 IV
Ron's Golf Cart moves for summary judgment on counts five, six and CT Page 6388 seven because the golf cart is not a motor vehicle within the meaning of General Statutes § 14-154a. In count five, Kelly alleges that Ron's Golf Cart is the owner and lessor of the golf cart and as such is liable for negligence of its lessee under General Statutes § 14-154a. In count six, Kelly realleges the allegations made in count five and concludes that Ron's Golf Cart is liable for recklessness of its lessee under General Statutes § 14-154.[13] In count seven, Kelly alleges that his damages result from Ron's Golf Cart negligently providing a vehicle when it knew that it would be driven by unauthorized persons, college age persons who may consume alcohol, and persons who have not been trained to operate the vehicle. In addition, Kelly alleges that Ron's Golf Cart is negligent in not providing warnings on the vehicle and in not indicating that the vehicle should not be driven with persons seated in the rear of the vehicle.
General Statutes § 14-154a provides: "Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner." Section14-154a does not define the term motor vehicle. General Statutes § 14-1
(47), however, defines a motor vehicle as "any vehicle propelled or drawn by any nonmuscular power, except . . . [a] . . . vehicle not suitable for operation on a highway."
Because the court has found in part II, supra, that this golf cart is not a motor vehicle because it is not a vehicle suitable for operation on a highway, the cart is not a motor vehicle within the meaning of General Statutes § 14-154a. Ron's Golf Cart's motion for summary judgment as to counts five and six is granted.
The court finds, however, that count seven, which sounds in common law negligent entrustment; see, e.g., Greeley v. Cunningham, 116 Conn. 515,520, 165 A.2d 678 (1933); does not depend upon a statutory definition of a motor vehicle. Ron's Golf's Cart's argument in support of summary judgment as to count seven does not address Kelly's claim of negligent entrustment. The motion for summary judgment as to count seven is denied.
In conclusion, Rossi's motion for summary judgment is denied as to counts one, two and four; SCSU's motion for summary judgment is granted as to count three; Ron's Golf Cart's motion is granted as to counts five and six, but denied as to count seven.
BY THE COURT
Bruce L. Levin CT Page 6389 Judge of the Superior Court